1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 25, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

MATTHEW C.,

      Plaintiff,

      v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

      Defendant.

No. 2:19-CV-00217-JTR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 16. Attorney Dana Chris Madsen represents Matthew C. (Plaintiff); Special Assistant United States Attorney Leisa Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income on June 7, 2012, alleging disability since May 1, 2010,[2] due to neuropathy in his legs and deafness in his right ear. Tr. 73. The application was denied initially and upon reconsideration. Tr. 92-95, 102-03. Administrative Law Judge (ALJ) Donna Walker held a hearing on December 11, 2014, Tr. 29-71, and issued an unfavorable decision on February 4, 2015. Tr. 11-25. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request on April 27, 2016. Tr. 1-5.

Plaintiff filed an action in this court on June 21, 2016. Tr. 505. On September 14, 2017, this Court remanded the claim for further proceedings. Tr. 512-28. The Appeals Council issued a remand order on January 3, 2018, sending the claim back to the hearing office for another hearing. Tr. 529-31.

ALJ Walker held a second hearing on May 10, 2018, Tr. 436-77, and issued a second unfavorable decision on August 2, 2018. Tr. 376-89. Plaintiff requested review by the Appeals Council, and the Appeals Council denied the request on April 26, 2019. Tr. 367-71. The ALJ's August 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 24, 2019. ECF No. 1.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.

Plaintiff was born in 1969 and was 42 years old as of the filing of his application. Tr. 387. He completed high school and has primarily worked in construction. Tr. 164, 179.

---

[2] Plaintiff later amended his alleged onset date to the date of the filing of his application. Tr. 31, 438.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant

from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 2, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 378.

At step two, the ALJ determined Plaintiff had the following severe impairments: peripheral neuropathy, likely alcohol-induced; cervical and lumbar spondylosis (arthritis); remote compression fracture at T5; chronic pain syndrome; and obesity. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 381.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform a range of light exertional work, with the following specific limitations:

> He can lift and/or carry up to 20 pounds occasionally (up to 1/3 of workday) and 10 pounds frequently (up to 2/3 of the workday); sit up to 6 hours in an 8-hour workday; and stand and/or walk up to 2 hours (1 hour at a time) in an 8-hour workday. The claimant has the unlimited ability to push and/or pull, other than as stated for lift/carry. Regarding postural abilities, the claimant has the ability to frequently balance, climb ramps or stairs, kneel, stoop (i.e., bend at the waist),

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

crouch (i.e., bend at the knees) or crawl; but should never climb ladders, ropes or scaffolds. Regarding use of hands, the claimant has the unlimited ability to handle, finger, or feel. The claimant has the unlimited ability to reach in all directions, including overhead. The claimant has the unlimited ability to see and communicate, and would work best in an environment that does not require excellent hearing in the right ear. Regarding the environment, the claimant has no limitations regarding exposure to extreme heat, wetness, humidity, fumes, odors, dust, gases or poor ventilation; but should avoid concentrated exposure to extreme cold, loud or concentrated noise, vibration, and hazards such as dangerous machinery and unprotected heights.

Tr. 381-82.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a construction worker. Tr. 386.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of performing jobs that existed in significant numbers in the national economy, including the jobs of cashier II, agricultural produce sorter, telemarketer, and final assembler. Tr. 387-88. The ALJ also found that if she had included various limitations on Plaintiff's mental and social functioning, there would still have been jobs he could perform, including produce sorter, final assembler, and hand packager. Tr. 388.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the application date through the day of the decision. *Id.*

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

///

Plaintiff contends the ALJ erred by not finding him disabled at step three of the sequential process.[3]

## DISCUSSION

### 1.    Step three

Plaintiff alleges the ALJ erred in failing to find him disabled at step three, based on the medical expert's testimony. ECF No. 15 at 14-19.

At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant's impairments meet or equal a Listing, the claimant is considered disabled without further inquiry. 20 C.F.R. § 416.920(d).

#### a. Listing 11.14

To meet Listing 11.14A for peripheral neuropathy, a claimant's impairments must result in disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while

_____

[3] Plaintiff also vaguely asserts the ALJ erred with respect to evaluating Plaintiff's mental health impairments and in rejecting his subjective complaints. ECF No. 15 at 14, 19-20. Plaintiff has failed to assign any specific error to the ALJ's analysis and did not brief these issues with any specificity. The Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide any arguments on these points, the Court declines to consider them.

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

standing or walking, or use the upper extremities. 20 C.F.R. Part 404, Subpart P, Appendix 1, §11.14A.

Listing 11.14B requires a showing of marked limitation in physical functioning and a marked limitation in one other area of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1, §11.14B. For a claimant to be found to have a marked limitation in physical functioning, their neurological disorder must result in the individual being "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities." *Id.* at §11.00.G.2.a.

### b. Medical expert's testimony

At the hearing held in 2018, medical expert Lynne Jahnke initially testified that she thought the "combination of the peripheral neuropathy with this arthritis throughout the spine" would equal listing 11.14. Tr. 455. The medical expert and the ALJ then had the following exchange:

> ALJ: Yeah, I'm going to have to respectfully disagree with you on that.
> ME: I know.
> ALJ: Because this – the x-rays, the MRIs on the back aren't done until recently and both, the CE, the in-person evaluation by Dr. Hall, and the testimony from Dr. Haynes, and both evaluations by the State Agency, gave him a light RFC with some postural limitations.
> ME: Yes.
> ALJ: And there's no –
> ME: I mean I had trouble understanding the A section because it was somewhat of an unusual presentation. And I do agree, the low back pain issues are recent, and so, to say that it combines all the way back to 2012, would be inappropriate.
> ALJ: Well, and there's not any longitudinal evaluations, documenting continued peripheral neuropathy that's significant. You know, and it just seems to me that when you look back at 2013, from

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

all indications from that one hospitalization, it appeared to be alcohol induced.

ME:  Yes. Let me – and so that's October, December – let me just get – 16F, I have a note saying, neuropathic pain to his – in his feet to his thighs, also, perhaps, involving his hands.

ALJ:  And there's no way to know what's going to happen with respect to his orthopedic issues that were evaluated in December of 2017 and early 2018. Correct?

ME:  Correct. And you're right, there's not great continuity regarding this peripheral neuropathy, per se. And as I started out, I was sort of troubled that no one thought it was severe enough to require a cane, so it just tells me that he walked in and out of the office, fairly normally. My – but I would – so I can be sort of convinced that there's no combination that would equal that listing, but if the Agency said light, I would be more in favor of sedentary, just because, I think he would have trouble being on his feet all day. You know, a patient with diabetic neuropathy, this kind of neuropathy, it is painful.

Tr. 455-56. The medical expert went on to discuss her opinion as to Plaintiff's exertional capabilities, and to discuss the improvement in his neuropathy and later development of back problems. Tr. 456-58.

> c. *ALJ's findings*

The ALJ found none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of any listed impairment. Tr. 381. She noted "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." *Id.* She also discussed Dr. Jahnke's testimony, giving it only some weight, noting her statements were "internally inconsistent and she seemed somewhat unsure of her conclusions" and finding the limitation to sedentary work to be inconsistent with largely intact exam findings, the assessments of other doctors, and Plaintiff's demonstrated activities and ability to work. Tr. 385-86.

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

1

*d. Analysis*

2

Plaintiff argues the ALJ erred in failing to find Plaintiff's impairments to

3

equal Listing 11.14. He asserts Dr. Jahnke did not change her mind about the

4

listing, but rather stated she "could be convinced," which Plaintiff asserts requires

5

medical opinion evidence, not the lay interpretation of the ALJ. ECF No. 15 at 11-

6

12. Plaintiff asserts the treatment records and objective findings confirm that

7

Plaintiff's conditions would meet or equal the listing of impairments as described

8

by the medical expert, and no other medical opinion or evidence contradicts Dr.

9

Jahnke's testimony. *Id.* at 18-19.[4]

10

Defendant argues Plaintiff has failed to carry his burden of demonstrating

11

that his impairments meet or equal a listing, and that the medical expert's

12

testimony was insufficient to support such a finding, given her hesitation and

13

equivocation. ECF No. 16 at 3-4. Defendant further argues the ALJ gave sufficient

14

reasons for discounting Dr. Jahnke's testimony and reasonably found the other

15

opinion evidence more consistent with the record. *Id.* at 5-7.

16

———————————————

17

[4] Plaintiff also argues that Dr. Jahnke's testimony that the listing was met

18

should have ended the inquiry and the further questions and answers about the

19

listing and Plaintiff's residual functional capacity were irrelevant. ECF No. 15 at

20

17-18. The regulations regarding the five-step sequential process indicate a

21

claimant is disabled if at step three the ALJ finds the claimant's conditions meet or

22

equal a listing. There is no authority that supports Plaintiff's position that all

23

inquiry into the nature of a claimant's condition must cease if a medical expert

24

testifies that a listing is satisfied. The ALJ has an independent duty to develop the

25

record and resolve conflicts and ambiguities in the evidence, including through

26

following up on testimony from witnesses and clarifying their positions, a duty

27

often relied upon by claimants and their counsel. Plaintiff advocates for a position

28

that would eliminate the ALJ's role as fact-finder and arbitrator of the evidence.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

The Court finds the ALJ did not err. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990). The ALJ engaged in a thorough discussion of the medical evidence, identifying findings contrary to the requirements of Listing 11.14A, including evidence of normal gait and balance, intact sensation and strength in all extremities, Plaintiff's ability to walk and engage in some work activity, and improvement in his neuropathy with medication and sobriety. Tr. 383-85. She made detailed findings regarding the Paragraph B criteria, identifying evidence supporting each area being no more than mild. Tr. 380-81.[5]

Plaintiff has failed to offer an argument as to how the evidence indicates the requirements of the listing are met or equaled. The ALJ reasonably found Dr. Jahnke's testimony to be internally inconsistent and somewhat unsure. Tr. 385-86. The doctor's equivocal testimony as to whether Plaintiff's peripheral neuropathy and back conditions both existed at the same time in a manner equivalent to listing-level severity is insufficient to support a finding that the listing was met or equaled. Furthermore, Plaintiff has not challenged the ALJ's findings regarding the paragraph B criteria; therefore, Plaintiff has advanced no plausible explanation for how either Part A or Part B of listing 11.14 is met or equaled. The ALJ did not err in her Step Three findings.

**CONCLUSION**

---

[5] Though the ALJ made these findings in the context of establishing Plaintiff's mental impairments as non-severe, the criteria are the same as in Listing 11.14B.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Therefore, **IT IS HEREBY ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED August 25, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 11